UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
RICHARD L. JAMESON,

                Plaintiff,

- against -

NYSED VESID, A. ABRAHAM, J.
TREVINGTON, M. WINESTINE, L. HARRIS,
NYS EDUCATION DEPARTMENT, R. MILLS,
Commissioner, NYS ATTORNEY GENERAL A.
CUOMO, and CHARLES ENLOE,

                Defendants.
------------------------------------------------------------X

**MEMORANDUM & ORDER**
10-CV-847 (RRM) (JO)

ROSLYNN R. MAUSKOPF, United States District Judge.

*Pro se* Plaintiff Richard L. Jameson ("Plaintiff") filed this action against the Vocational and Educational Services for Individuals with Disabilities ("VESID"), a division of the New York State Education Department ("NYSED"),[1] relating to VESID's decision to terminate funding of Plaintiff's limousine business as part of a self-employment plan under Title I of the federal Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. §§ 720-728a, and related state law. Defendants seek to dismiss Plaintiff's Third Amended Complaint, and oppose the filing of a proposed Fourth Amended Complaint. Plaintiff is granted *in forma pauperis* status for purposes of these motions. For the reasons set forth herein, the Defendants' motions are GRANTED.

---

[1] The individual Defendants named in the action are VESID employees at VESID's Brooklyn office, former NYSED Commissioner Richard Mills, former Attorney General Andrew Cuomo, and Assistant Attorney General Charles Enloe.

I. **BACKGROUND**

   a. **Plaintiff's Individualized Plan of Employment Through VESID**

VESID provides vocational rehabilitation services to disabled individuals pursuant to Title I of the Rehabilitation Act and related state law. *See* 29 U.S.C. §§ 720-728a; 34 C.F.R. § 361; N.Y. Educ. Law §§ 1001-10 (McKinney 2007); N.Y. Comp. Codes R. & Regs. tit. 8, § 247 (2012). The Rehabilitation Act provides federal funding "to assist States in operating statewide comprehensive, coordinated, effective, efficient, and accountable programs of vocational rehabilitation". 29 U.S.C. § 720(a)(2). These programs are "designed to assess, plan, develop, and provide vocational rehabilitation services for individuals with disabilities, consistent with their strengths, resources, priorities, concerns, abilities, capabilities, interests, and informed choice, so that such individuals may prepare for and engage in gainful employment." *Id.*; *see also* 34 C.F.R. § 361.1(b). Participating states like New York are required to submit plans for vocational rehabilitation for federal approval, subject to certain federal reporting requirements. 29 U.S.C. §§ 721, 726(b)(2); 34 C.F.R. §§ 361.2, 361.10, 361.29. New York's Vocational Rehabilitation Law, N.Y. Educ. Law §§ 1001-10, and its implementing regulations N.Y. Comp. Codes R. & Regs. tit. 8, § 247 govern the vocational rehabilitations programs provided by the state.

An individual is eligible for rehabilitation assistance if he "has a physical or mental impairment which for such individual constitutes or results in a substantial impediment to employment," "can benefit in terms of an employment outcome from vocational rehabilitation services," and "requires vocational rehabilitation services to prepare for, secure, retain, or regain employment." 29 U.S.C. §§ 705(20)(a), 722(a)(1). VESID designs an Individualized Plan of Employment ("IPE") for each eligible recipient ("consumer") and provides that consumer with

the vocational rehabilitation services necessary to reaching the goals set out in the IPE. 29 U.S.C. §§ 722(b), 723(A); 34 C.F.R. §§ 361.45, 361.48; N.Y. Educ. Law § 1004(2); N.Y. Comp. Codes R. & Regs. tit. 8, §§ 247.11, 247.13. The rehabilitation services are primarily provided by VESID-approved vendors who are directly reimbursed by the State. N.Y. Comp. Codes R. & Regs. tit. 8, § 247.16.

Plaintiff qualified for VESID services and proposed a business plan to start a limousine service based on his prior experience as a limousine driver. VESID's 1301.00 Self-Employment Policy allows VESID to fund a maximum of $11,000 in start-up costs for an eligible recipient's IPE.[2] (*See* IHO Decision 7, 9, May 21, 2009, Doc. No. 8-2.) VESID's 1355.00 Transportation Policy ("Transportation Policy") limits VESID funding for vehicle use and prohibits VESID from purchasing or leasing vehicles for the recipient's transportation as part of the vocational rehabilitation services facilitating the recipient's IPE.[3] (*See* IHO Decision 7, 9, Doc. No. 8-2.)

VESID initially approved Plaintiff's IPE and authorized a total of aproximately $11,000 to fund other equipment and services for the limousine business. (IHO Hr'g Tr. 30:17-30:21, April 17, 2009, Doc. No. 8-2.) At the time the IPE was approved, Plaintiff presented evidence to his vocational rehabilitation counselor that he had access to a vehicle; subsequently, however, plaintiff could not procure the proposed vehicle and sought to secure a replacement. (*Id.* at 31:19-32:4.) As the viability of Plaintiff's IPE was contingent upon the availability of a vehicle, and VESID's Transportation Policy prohibits the purchase or lease of vehicles for its consumers, VESID withheld funding until Plaintiff was able to provide proof of vehicle ownership, and

---

[2] *1301.00 Self-Employment Policy*, NYSED.gov, http://www.acces.nysed.gov/vr/current_provider_information/vocational_rehabilitation/policies_procedures/1301_self_employment/policy.htm (last visited March 20, 2012).
[3] *1355.00 Self-Employment Policy*, NYSED.gov, http://www.acces.nysed.gov/vr/current_provider_information/vocational_rehabilitation/policies_procedures/1355_transportation_services/policy.htm (last visited March 20, 2012).

indicated a willingness to work with Plaintiff to develop another IPE if he was not able to furnish such proof by a certain date. (*Id*. at 32:20-33:18.) Ultimately, Plaintiff was unable to secure a vehicle and, on March 6, 2009, VESID terminated funding for the plan unless Plaintiff could provide proof vehicle ownership. (*Id*. at 32:5-32:19; 33:8-33:18.)

### b. IHO Review of VESID's Decision to Terminate Funding

A consumer who disagrees with a determination made by VESID can request an impartial due process hearing before an impartial hearing officer ("IHO") no later than 90 days after the consumer is notified of the determination. N.Y. Comp. Codes R. & Regs. tit. 8, § 247.4; 29 U.S.C. § 722(c)(5); 34 C.F.R. § 361.57(e). The IHO, vested with the powers provided by Section 304 of the State Administrative Procedures Act, is required to issue a fair, independent and impartial written decision after receiving and considering all relevant and reliable evidence from the consumer. N.Y. Comp. Codes R. & Regs. tit. 8, § 247.4(i); 34 C.F.R. § 361.57(e)(3). The Rehabilitation Act allows states to establish procedures for administrative appellate review of IHO decisions, but since New York has not done so, the IHO decision is final and can only be appealed through a civil action brought in the appropriate federal or state court. 29 U.S.C. §§ 722(c)(5)(D), (G), (J); 34 C.F.R. §§ 361.57(e)(4), 361.57(g), 361.57(i)(l).

Plaintiff requested a due process hearing by email dated March 9, 2009, and an IHO was appointed on March 10, 2009. A hearing was held on April 17, 2009 addressing Plaintiff's challenges to VESID's decision; representing himself, Plaintiff participated in the hearing. (*See* IHO Decision 4, May 21, 2009, Doc. No. 8-2.) On May 21, 2009, the IHO issued a final decision upholding VESID's termination of funding, which was mailed to Plaintiff on the same

day, and again on May 27, 2009.[4]  (*See* Letter from Linda Agoston, IHO, to Richard Jameson (May 21, 2009), Doc. No. 8-2; Letter from Michael Plotzker, Unit Coordinator, NYSED VESID, to Richard Jameson (May 27, 2009), Doc. No. 8-2.)

In August 2009, pursuant to Section 722(c)(5)(J), Plaintiff, proceeding *pro se*, filed an Article 78 proceeding in New York State Supreme Court, Kings County against VESID and Defendant Andrea Abraham, Plaintiff's vocational rehabilitation counselor at VESID, challenging the IHO's final decision.[5]  The Article 78 proceeding was transferred from Kings County to Albany County on January 5, 2010 following respondents' motion to change venue pursuant to N.Y. C.P.L.R. 506(b)(2) and 511(b).[6]  On February 23, 2010, while his Article 78 proceeding was pending in the Supreme Court, Albany County, Plaintiff filed the instant federal action.

On June 21, 2010, plaintiff's Article 78 proceeding was again transferred to the Appellate Division, Third Department pursuant to N.Y. C.P.L.R. 7804(g) (*See* June 9, 2010 Order of Transfer, Doc. No. 20-5 at 21-22; Letter from Kelly L. Munkwitz, Assistant Attorney General, to Richard Jameson (June 24, 2010), Doc. No. 20-5 at 26.).  Plaintiff was given instructions on how to perfect his Article 78 in the Third Department and given notice that he had nine months from the date of the transfer, or roughly until March 9, 2011, to do so.  (*See* Directions on Perfecting A Transferred Article 78 Proceeding, Doc. No. 20-5 at 28.)  Letter from Robert D. Mayberger, Clerk of the Appellate Division, Third Department, to Richard Jameson (March 22, 2011), Doc. No. 28, at 11.  While the record is unclear, it appears that Plaintiff failed to so do.  In any event,

---

[4] For purposes of determining whether an action is timely filed within a specific limitations period, it can be presumed that a notice provided by a government agency is mailed on the date given on the notice and "received three days after its mailing." *Sherlock v. Montefiore Medical Ctr.*, 84 F.3d 522, 525-26 (2d Cir. 1996).
[5] *See Jameson v. NYSED VESID*, Index No. 18575/09.
[6] *See* Decl. Andrew H. Meier in Supp. Mot. Dismiss, Ex. B, Doc. No. 35; *Jameson v. NYSED VESID*, Index No. 7616/09.  N.Y. C.P.L.R. 506(b)(2) requires that proceedings brought against NYSED and its constituent units and employees be filed in Supreme Court, Albany County.

5

it is clear that plaintiff's Article 78 proceeding was pending in Albany County at the time this action was filed

### c. Procedural History of the Instant Federal Action

Since the inception of this action, Plaintiff has filed five different Complaints over a period spanning roughly one year, each challenging the decisions by VESID and/or the IHO regarding the termination of his funding.  By Order dated March 3, 2010 (Doc. No. 3), and pursuant to its authority under 28 U.S.C. § 1915(e)(2)(B), the Court dismissed Plaintiff's original Complaint (ECF. No. 1) for failure to state a claim, and granted leave to amend.  Plaintiff timely filed an Amended Complaint (Doc. No. 4), and by Order dated July 19, 2010 (ECF. No. 7), the Court dismissed Plaintiff's Amended Complaint and again granted leave to amend, this time specifically directing Plaintiff to detail whether he participated in an impartial due process hearing and whether a final administrative decision was issued by a hearing officer, both necessary prerequisites to trigger federal district court review under 29 U.S.C. § 722(c) of the Rehabilitation Act.

Plaintiff filed a Third Amended Complaint (Doc. No. 8).  Plaintiff made no mention of his then-pending Article 78 proceeding in state court, and again raised challenges to VESID's actions and the IHO's final decision, alleging that:  (i) he did not fully understand both the IHO's final decision and the transcript of his due process hearing before the IHO; (ii) the IHO allowed VESID representatives at the hearing "to manipulate the proceedings and totally confuse the issues"; (iii) the IHO prevented Plaintiff from questioning the VESID representatives at several points; and (iv) the IHO allowed the "non-issue" of transportation to encompass a major part of the proceedings while tabling the issue of repaying Plaintiff's monetary out-lays.  (*Id*. at 2-3.)

6

In the instant motion, Defendants have moved to dismiss this Third Amended Complaint on multiple grounds (Mem. Supp. Defs.' Mot. Dismiss 6-8, Doc. No. 34). The Court set a briefing schedule; on the date his opposition was due, Plaintiff filed instead a proposed Fourth Amended Complaint, this time couching his claims as "fraud," adding as a new defendant an Assistant Attorney General responsible for litigating his Article 78 proceedings on behalf of VESID and other state actors, and attaching multiple letters and documents totaling over 200 pages in length. (Doc. No. 20.) As to the motion to dismiss his Third Amended Complaint, Plaintiff claims it "should be denied in its entirety because the issues and concerns raised are answered in the plaintiff's 4th amended complaint". (Doc. No. 25.)

In addition to their motion to dismiss the Third Amended Complaint, Defendants now seek to deny Plaintiff leave to file his Fourth Amended Complaint. (Doc. No. 43.) After being given an extension to file his papers, Plaintiff opposed the motion. (Doc. No. 41.)

For the reasons set forth herein, Plaintiff's Third Amended Complaint is DISMISSED, and Plaintiff is DENIED leave to file his Fourth Amended Complaint.

## II. MOTION TO DISMISS

### a. Standard of Review

As required by Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) authorizes dismissal of the case if the plaintiff has failed "to state a claim upon which relief can be granted." "The standard for a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction is 'substantively identical' to the 12(b)(6) standard, except that the plaintiff has the burden of establishing jurisdiction in a 12(b)(1) motion." *S & R Dev. Estates, LLC v. Bass*, 588

F. Supp. 2d 452, 460 (S.D.N.Y. 2008); *see Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003).

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)); *see also Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 193 (2d Cir. 2003) ("Failure of subject matter jurisdiction, of course, is not waivable and may be raised at any time by a party or by the court *sua sponte*.") In considering a motion to dismiss for lack of subject matter jurisdiction, a district court "must accept as true all material factual allegations in the complaint, but [is] not to draw inferences from the complaint favorable to plaintiffs." *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004) (citation omitted). This Court, however, "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but [it] may not rely on conclusory or hearsay statements contained in the affidavits." *Id.* (citations omitted). "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys. Inc.*, 426 F.3d 635, 638 (2d Cir. 2005).

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint need not contain "'detailed factual allegations,'" but it must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rather, the plaintiff's

complaint must include "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 570). The determination of whether "a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950 (citing *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007)).

"A document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008) (internal quotation marks omitted). Accordingly the Court construes Plaintiff's Third Amended Complaint with "special solicitude" and interprets it to raise the strongest arguments it suggests. *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474-75 (2d Cir. 2006) (quoting *Ruotolo v. I.R.S.*, 28 F.3d 6, 8 (2d Cir. 1994)).

### b. Discussion

Plaintiff's federal action, embodied in his Third Amended Complaint, in essence seeks judicial review of the IHO's final decision upholding VESID's determination to cease funding plaintiff's IPE. For the reasons that follow, Plaintiff's Third Amended Complaint must be dismissed.

#### i. The Rehabilitation Act Does Not Contemplate Filing Simultaneous Actions in State and Federal Courts

Title I of the Rehabilitation Act, more specifically, 29 U.S.C. § 722(c)(5)(J), entitles an aggrieved VESID consumer to judicial review of an IHO's final decision in "any State court of competent jurisdiction or in a district court of the United States of competent jurisdiction." The

plain language of the statute, and Congress's specific use of the disjunctive, allow for an election between a state or federal forum. Clearly, it does not contemplate providing two bites at the same apple by allowing simultaneous litigation in federal court after Plaintiff has commenced an action in state court, or vice versa. Courts have so held in construing the analogous provision of the Individuals With Disabilities Education Act, commonly referred to as the IDEA, a statute with similar purpose to the Rehabilitation Act.[7]

Section 1415(i)(2)(A) of the IDEA entitles a plaintiff to judicial review of a final agency decision with regard to the provision of IDEA services and, like 29 U.S.C. § 722(c)(5)(J), allows an aggrieved party to bring a civil action to challenge that final decision "in any State court of competent jurisdiction or in a district court of the United States." Section 1415(i)(2)(A) does not contemplate simultaneous litigation in both forums. *See Coe v. Michigan Dept. of Educ.*, 693 F.2d 616, 617 (6th Cir. 1982) ("'[A § 1415(i)(2)(A)] action may be brought in any State court of competent jurisdiction or in a district court of the United States ....' Clearly, by the use of the disjunctive, Congress did not intend that aggrieved parents should be permitted to file two actions simultaneously."); *Scruggs v. Campbell*, 630 F.2d 237 (4th Cir. 1980) ("Congress did not intend judicial consideration of [a § 1415(i)(2)(A)] controversy in both federal and state courts. By giving the party aggrieved by the final administrative decision the option to proceed in either forum, the statute avoids simultaneous litigation in both."); *Smith v. Indian Hill Exempted Village School Dist.*, No. 1:10–cv–718, 2011 WL 4348101, at *3 (S.D. Ohio May 5, 2011) ("The reasoning of *Coe* would appear to apply regardless of the present posture of the state court

---

[7] *See, e.g.*, *Mark H. v. Lemahieu,* 513 F.3d 922, 929 (9th Cir.2008) ("While the IDEA focuses on the provision of appropriate public education to disabled children, the Rehabilitation Act of 1973 more broadly addresses the provision of state services to disabled individuals."); *see also Muller v. Comm. on Special Educ.,* 145 F.3d 95, 100 n.2 (2d Cir.1998) (recognizing that the purposes of the Rehabilitation Act are similar to those of the IDEA, with the Rehabilitation Act defining more broadly the concept of "disability").

10

litigation, because it speaks to a litigant's election of a state **or** federal forum under statutory language permitting a complaint seeking judicial review to be filed 'in any State court ... or in a district court of the United States'—not both. *See* 20 U.S.C. § 1415(i)(2)(A).") (emphasis in the original).

Plaintiff challenged the IHO's final decision in state court by filing an Article 78 proceeding in New York Supreme Court in August 2009, and that proceeding was pending and in the midst of litigation when Plaintiff filed the present action in this Court in February 2010. Somewhat tellingly, Plaintiff vigorously contested respondents' motion in the Article 78 proceeding to change venue to Albany County, and then brought the same claims here after losing that motion. In any event, having first elected judicial review in state court, Plaintiff may not file a duplicative federal action under Section 722(c)(5)(J) particularly where, as here, Plaintiff may obtain the same relief in the state forum.[8]

On this ground alone, Plaintiff's Third Amended Complaint must be dismissed.

### ii. The Instant Action is Time Barred

Moreover, even if Plaintiff could properly bring this federal action, it is time-barred. The Rehabilitation Act does not specify a limitations period for bringing actions under Section

---

[8] The subsequent actions relating to the transfer of plaintiff's Article 78 proceeding is of no moment. The record is unclear as to whether plaintiff perfected that proceeding. Assuming that he did not, it may be considered abandoned pursuant to Section 800.12 of the Rules of Practice of the Supreme Court, Appellate Division. *See* N.Y. Comp. Codes R. & Regs. tit. 22, § 800.12, available at http://www.courts.state.ny.us/ad3/rulesofthecourt.html#800.12 (last visited March 20, 2012) ("A civil appeal or proceeding shall be deemed to have been abandoned where appellant or petitioner shall fail to serve and file a record and brief within nine months after the date of the notice of appeal or order of transfer…."). However, under Section 800.12, Plaintiff may still have a basis to on request if he can show "a reasonable excuse for the delay" and evidence of merit to the proceeding. *See* N.Y. Comp. Codes R. & Regs. tit. 22, § 800.12 ("[T]he clerk of this court shall not accept or file any record or brief attempted to be filed beyond the nine-month period unless directed to do so by order of the court. Such an order shall be granted only pursuant to a motion on notice supported by an affidavit setting forth a reasonable excuse for the delay and facts showing merit to the appeal or proceeding."). Plaintiff cannot rely on the absence of a state court remedy and thereby compel the federal court to hear his case where plaintiff "would not have been deprived of a state remedy in the first instance had he filed a timely Article 78 proceeding in state court." *See Surowitz v. New York City Retirement System*, 376 F. Supp. 369, 377 (S.D.N.Y. 1974).

722(c)(5)(J). However, "when Congress has not established a time limitation for a federal cause of action, the settled practice has been to adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so." *Wilson v. Garcia,* 471 U.S. 261, 266-67 (1985). "In borrowing state statutes of limitations for federal claims, a federal court must choose the statute of limitations of the most analogous state claim provided 'that the borrowed period of limitations [does] not discriminate against the federal claim.'" *Chin v. Bowen*, 833 F.2d 21, 23 (2d Cir. 1987) (quoting *Okure v. Owens*, 816 F.2d 45 (2d Cir. 1987)). "The characterization of the federal claim for the purpose of borrowing a state statute of limitations is matter of federal law and must be done with an eye to the federal interests at stake." *Chin*, 833 F.2d at 23 (citing *Wilson,* 471 U.S. at 269-70).

In this case, given the statutory scheme set forth in the Rehabilitation Act itself, the most analogous state statute is Article 78 of the New York Civil Practice Law and Rules, which contains a four-month statute of limitations as provided for by CPLR 217. *See Carrigan v. New York State Educ. Dept.*, 485 F. Supp. 2d 131, 136 (N.D.N.Y. 2007) (applying CPLR 217's four-month statute of limitations to a challenge of VESID's denial of vocational services under Title I of the Rehabilitation Act); *see also Adler v. Educ. Dep't of NYS*, 760 F.2d 454, 456 (2d Cir. 1985) (borrowing the CPLR's four-month statute of limitations for action seeking reimbursement of tuition cost under precursor to the Individuals with Disabilities Act ("IDEA"), which lacked a statute of limitations of its own); *Mackey v. Bd. of Educ. for the Arlington Centr. Sch. Dist.,* 373 F. Supp. 2d 292, 300 (S.D.N.Y. 2005) (applying a four-month statute of limitations to challenge of school district's individualized education program for disabled student under the IDEA).

Application of Article 78's four-month limitations period is consistent with the Rehabilitation Act and its underlying policies. Article 78 proceedings are used to challenge final

agency decisions that cannot be adequately reviewed by appeal to a court or to some other body or officer. *See* N.Y. C.P.L.R. 7801(1). "[W]here a federal statute provides that suit may be brought in both federal and state court, there is something to be said for having the same statute of limitations applicable in both, at least to avoid forum shopping by prospective plaintiffs." *Adler*, 760 F.2d at 459. Such is the case with the Rehabilitation Act, under which Plaintiff is entitled to judicial review of the IHO's final decision in "any State court of competent jurisdiction or in a district court of the United States of competent jurisdiction without regard to the amount in controversy." 29 U.S.C. § 722(c)(5)(J)(i).

The IHO's final decision was issued on May 21, 2009 and mailed to Plaintiff first on the same day, and again on May 27, 2009. In the letters transmitting the decision, Plaintiff was specifically advised that any review of the IHO's decision must be pursued through the courts. Plaintiff filed the instant federal action on February 23, 2010, approximately nine months after receiving notice of the IHO's final decision and of the need to seek judicial appeal if he wished to contest the final decision. Accordingly, Plaintiff's claims are time barred.

### iii.  *Younger* Abstention Mandates Dismissal of Plaintiff's Action

Finally, in light of Plaintiff's pending Article 78 proceeding, abstention by this Court is warranted. "As the Supreme Court emphasized in *Younger v. Harris,* 401 U.S. 37, 43-45, 91 S. Ct. 746 (1971), federal courts should generally refrain from enjoining or otherwise interfering in ongoing state proceedings. This principle of abstention is grounded in interrelated principles of comity and federalism." *Spargo v. N.Y. State Comm'n on Judicial Conduct*, 351 F.3d 65, 74 (2d Cir. 2003), *cert. denied*, 541 U.S. 1085 (2004). "*Younger* generally prohibits courts from 'taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings' so as to avoid unnecessary friction." *Id.* at 75 (quoting *Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002)). Though *Younger* was decided in the

13

context of federal court abstention in the face of pending state criminal proceedings, this doctrine has been expanded to apply to state civil and administrative proceedings as well. *See, e.g., Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.,* 477 U.S. 619 (1986); *Middlesex County Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 432 (1982) ("The policies underlying *Younger* are fully applicable to noncriminal judicial proceedings when important state interests are involved.").

"*Younger* abstention is required when three conditions are met: (1) there is an ongoing state proceeding; (2) an important state interest is implicated in that proceeding; and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of the federal constitutional claims." *Diamond "D" Constr. Corp.*, 282 F.3d at 198 (citing *Grieve v. Tamerin*, 269 F.3d 149, 152 (2d Cir. 2001)). The three conditions are met in this case. First, when this action was filed, Plaintiff had an active, ongoing Article 78 proceeding in the State Supreme Court, Albany County.[9] Second, in determining whether the "important state interest" requirement has been met, the Second Circuit considers "whether the state action concerns the central sovereign functions of state government such that 'exercise of the federal judicial power would disregard the comity between the States and the National Government.'" *Philip Morris, Inc. v. Blumenthal,* 123 F.3d 103, 105-06 (2d Cir. 1997) (quoting *Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 11 (1987)). This inquiry does not "'look narrowly to [the State's] interest in the *outcome* of the particular case,' but rather looks to 'the importance of the generic proceedings to the State.'" *Philip Morris, Inc.,* 123 F.3d at 106 (quoting *New Orleans Pub. Serv., Inc. v. Council*

---

[9] The uncontroverted record evidence demonstrates that when this federal action was filed, Plaintiff's Article 78 proceeding was pending and ongoing before the Supreme Court, Albany County. As noted above, Plaintiff litigated the initial change of venue to Albany and lost, and subsequently, the proceeding was transferred to the Appellate Division on respondents' motion. That Plaintiff may have subsequently abandoned his Article 78 proceeding by failing to perfect the proceeding in the appellate court is of no moment, particularly where, as here, Congress, in crafting the Rehabilitation Act, specifically provided an aggrieved party the right to choose between a state or federal forum, each of which can accord Plaintiff the relief he seeks, even now on Plaintiff's motion if he chooses to pursue one.

*of New Orleans*, 491 U.S. 350, 365 (1989)) (emphasis in original). "The burden is on the state to establish that an important state interest is implicated." *Philip Morris, Inc.,* 123 F.3d at 106.

As Defendants argue in their memorandum supporting the motion to dismiss, an important state interest is implicated in Plaintiff's Article 78 proceeding before the state court. It involves both VESID's policies and regulations under New York's Vocational Education Law regarding the State's provision of rehabilitation services as well as their fiscal integrity. (*See* Mem. Supp. Defs.' Mot. Dismiss 10-11 (citing *Trainor v. Hernandez*, 431 U.S. 434, 449-50 (1977).) Moreover, the state proceeding afforded Plaintiff an adequate opportunity for judicial review of the very same issues he subsequently sought to litigate in federal court. *See Middlesex County, supra,* 457 U.S. at 432 ("[t]he accused should first set up and rely upon his defense in the state courts, even though this involves a challenge of the validity of some statute, unless it plainly appears that this course would not afford adequate protection") (quoting *Younger,* 401 U.S. at 45) (internal quotation marks and citation omitted.); *see also Erdmann v. Stevens*, 458 F.2d 1205, 1211 (2d Cir. 1972) (applying *Younger* abstention where constitutional issues raised in the course of disciplinary proceedings can be adequately addressed by state appellate court). Indeed, the Rehabilitation Act itself contemplates adequate remedies in either a state or federal forum. Thus, *Younger* abstention applies.

Plaintiff has been given multiple opportunities to properly challenge the decisions of VESID and the IHO in the judicial systems of both the state and federal courts. In addition to the five Complaints filed in this action, Plaintiff pursued and litigated the same claims in his Article 78 proceeding in the state courts. Plaintiff has been accorded proper deference in light of his *pro se* status by, *inter alia*, this Court's granting of extensions, ensuring proper and timely notice of court actions, construing his grievances liberally, and providing opportunities for amendment

and opposition to motions which Plaintiff eagerly and zealously embraced. Under the law, he has failed to assert here any viable claims. For each of the reasons discussed above, Defendants' Motion to Dismiss the Third Amended Complaint is GRANTED.

### III. LEAVE TO AMEND

Plaintiff seeks to file a Fourth Amended Complaint alleging "fraud" against VESID and its employees in the handling of his IPE, and against the State Attorney General and his Assistants, including a newly-added defendant, Assistant Attorney General Kelly Munkwitz, for their conduct in the Article 78 proceeding and this action. Plaintiff seeks money damages. (Fourth Amended Complaint, Doc. No. 20 at 8-9.) In the absence of any federal claims, this Court lacks subject matter jurisdiction over common law claims of fraud either under federal question or diversity jurisdiction.[10] *See, e.g.*, *State of New York v. White*, 528 F.2d 336, 338 (2d Cir. 1995) (federal question jurisdiction may be properly invoked only if the plaintiff's complaint necessarily draws into question the interpretation or application of federal law). To the extent that it could assert supplemental jurisdiction, the Court declines in its discretion to so do in light of the very early stages of this litigation, the nature of the claims asserted, and the state's strong interests in protecting the integrity of its own administrative processes. *Klein & Co. Futures, Inc. v. Bd. of Trade,* 464 F.3d 255, 262 (2d Cir. 2006).

---

[10] In his Fourth Amended Complaint, Plaintiff makes passing references to federal regulations, including 34 C.F.R. 361 *et seq*., which are the regulations implementing judicial review of IHO final decisions pursuant to 20 U.S.C. § 722(c)(5), and "the accountability and transparency standards of the American Recovery and Reinvestment Act," which applies only to non-Federal employers who make protected whistleblower disclosures. (*See* Doc. No. 20 at 9.) On the facts as alleged, neither gives rise to federal question jurisdiction. Moreover, there is no allegation that any of the parties are diverse to give rise to this Court's jurisdiction under 28 U.S.C. § 1446.

## **CONCLUSION**

As such, and for the reasons stated herein, Defendants' motion to dismiss [Doc. No. 33] is GRANTED, and all of Plaintiff's claims are DISMISSED. Further, Plaintiff is DENIED leave to file a Fourth Amended Complaint. The Clerk of Court shall enter judgment accordingly, mail a copy of this Memorandum and Order to plaintiff *pro se*, and close this case.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated: Brooklyn, New York
March 20, 2012

_____
ROSLYNN R. MAUSKOPF
United States District Judge